IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**QASIM SHADAHAN,**

        Plaintiff,

v.                                              **CIVIL ACTION NO. 3:21-CV-38
(GROH)**

**MACY'S CORPORATE SERVICES, LLC,**
a foreign corporation, formerly known as
**MACY'S CORPORATE SERVICES, INC.,**
a foreign corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISSING PROCEEDINGS

Currently pending before the Court is Defendant Macy's Corporate Services, LLC's Motion to Compel Arbitration and Dismiss or Stay Proceedings, filed on June 11, 2021. ECF No. 10. Plaintiff Qasim Shadahan filed a Response in opposition to the motion on June 25, 2021. ECF No. 12. The Defendant filed a Reply on July 2, 2021. ECF No. 13. Having reviewed the record and considered the arguments of the parties, the Court **GRANTS** the motion to compel and **DISMISSES** this action.

### I. BACKGROUND

This case arises out of the Plaintiff's former employment with the Defendants. The Plaintiff is a native of Iraq, who moved to the United States in 2009 with his family. ECF No. 1-1 ¶ 6. From October 9, 2013 to February 8, 2019, the Plaintiff worked for Defendant

Macy's Corporate Services, Inc. ("MCS") at its Logistics and Operations warehouse in Martinsburg, West Virginia. Id. ¶¶ 7–12. The Plaintiff alleges that he was terminated after he applied for intermittent leave under the Family Medical Leave Act ("FMLA") to help his wife care for their infant child. Id. ¶¶ 22 & 27.

On the first day of his employment, the Plaintiff was given a "Solutions InSTORE Brochure and Plan Document" that detailed MCS's four-step employee dispute resolution system, called Solutions InSTORE. The first three steps of the program are internal to MCS, allowing employees to raise complaints with, a local supervisor, the regional Office of Senior Human Resources Management, and the Office of Solutions InSTORE, respectively. The fourth and final step consists of binding arbitration through the American Arbitration Association. MCS employees are deemed to have agreed to the fourth step unless they opt out of binding arbitration at the outset of their employment by mailing an "Election Form" to the Office of Solutions InSTORE within thirty days of their hire. The Solutions InSTORE Brochure contains a copy of the Election Form, with instructions on how to complete and mail the form. ECF No. 10-1 at 29–30.

Additionally, the Plaintiff viewed and electronically signed the Solutions InSTORE New Hire Acknowledgement Form on his first day, attesting to the following:

> I have received a copy of the Solutions InSTORE brochure and Plan Document and acknowledge that I have been instructed to read the material carefully. I understand that I have thirty (30) days from my date of hire to review this information and postmark my election form to the Office of Solutions InSTORE if I wish to opt out of Step 4, the final step of the Company's early dispute resolution program, Solutions InSTORE, which is final and binding arbitration. **I understand that I will be automatically enrolled in the program and subject to final and binding arbitration from my date of hire unless, within thirty (30) days of my date of hire, I take the steps required to opt out of Step 4 – Arbitration** . . . .
>
> . . .

2

> I understand that if I do not opt out of this program, any disputes or claims relating to my employment, other than those expressly excluded from arbitration in the Plan document, will be resolved using the Solutions InSTORE process described in the brochure and Plan Document. The process continues to apply to such employment-related disputes even after my employment ends. I understand that disputes filed under Step 4 are resolved by a professional not affiliated with Macy's, Inc. in an arbitration proceeding, instead of by a judge or jury in a court proceeding. I can read all about Solutions InSTORE, including the benefits and tradeoffs of Step 4, in the brochure and Plan Document.

ECF No. 10-2 at 20–22 (emphasis added). According to the Plaintiff, "he did not understand what was on the computer" when he electronically signed the Acknowledgement Form because of his limited ability to read and write English. ECF No. 12 at 4. He avers that he did not know what arbitration meant, or that by "checking a box on the computer . . . he was agreeing to Macy's arbitration program." Id. He alleges although MCS knew that he had a limited ability to understand English, they did not provide him an explanation in his native language. Id. He also alleges that he does not recall being provided an election form with the Brochure. Id.

On February 5, 2021, the Plaintiff filed this lawsuit in the Berkeley County Circuit Court against the Defendants. See ECF No. 1-1. In his complaint, the Plaintiff alleges discrimination and retaliation in violation of the FMLA, and interference with his FMLA rights. Id. On March 12, 2021, the Defendant removed the case to this Court based on federal question jurisdiction. See ECF No. 1. On June 11, 2021, the Defendant filed the instant motion pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. See ECF No. 10. The Defendant contends that the Plaintiff agreed to arbitrate all employment-related disputes by signing the Acknowledgement Form and failing to file an election form. Accordingly, the Defendant moves the Court to compel the Plaintiff to arbitrate his claims and dismiss the case, or in the alternative, stay the proceedings.

3

## II. APPLICABLE LAW

The Federal Arbitration Act (the "FAA") provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Accordingly, under the FAA, "a court is required to stay any suit or proceeding pending the arbitration of any issue referable to arbitration under an agreement in writing for such arbitration.'" Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (quoting 9 U.S.C. § 3) (quotation marks omitted). Additionally, the Fourth Circuit has held that, despite the language of the FAA regarding a stay of arbitration, when all of the claims in a lawsuit are required to be arbitrated, dismissal, rather than a stay, is a proper remedy. Choice Hotels, Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001).

The Court must grant a motion to compel arbitration "where a valid arbitration agreement exists and the issues in a case fall within its purview." Adkins, 303 F.3d at 500 (citing United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001)). In considering a motion to compel arbitration, the Court applies the same standard as a motion for summary judgment. See Rowland v. Sandy Morris Fin. & Est. Planning Servs., LLC, 993 F.2d 253, 258 (4th Cir. 2021). Thus, under the FAA, the party seeking a jury trial "must show genuine issues of material fact regarding the existence of an agreement to arbitrate." Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 (4th Cir. 2016). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Further, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. DISCUSSION

In the Fourth Circuit, a party can compel arbitration under the FAA if it can demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991). Here, the Plaintiff contests the second element. The Plaintiff's sole argument is that there is no valid arbitration agreement because he did not read and understand the Acknowledgment Form when he signed it. Thus, the instant issue is one of law, not of fact, and summary judgment is appropriate.

"[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." Schein v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (U.S. 2019). If there is no valid arbitration agreement, the Court cannot compel arbitration. See AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). The Court applies West Virginia contract law principles to determine whether there is an enforceable contract. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (stating, "courts generally . . . should apply ordinary state-law principles that govern the formation of [arbitration agreements]").

Under West Virginia law, "[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." Syl. pt. 9, Ways v. Imation Enter. Corp., 214 W. Va. 305, 308, 589 S.E.2d 36, 39 (2003). "The contractual concept of 'mutual assent' or 'meeting of the minds' relates to the parties having the same understanding of the terms of the agreement reached." Messer v. Huntington Anesthesia Grp., Inc., 222 W. Va. 410, 418, 664 S.E.2d 751, 759 (2008). In order for there to be mutual assent, there must be an offer by one party and an acceptance on another. Ways, 214 W. Va. at 313, 589 S.E.2d at 44. "Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement . . . ." Id. (quoting Bailey v. Sewell Coal Co., 190 W. Va. 138, 140–41, 437 S.E.2d 448, 450–51 (1993)) (citations omitted).

Because the Plaintiff signed the Acknowledgement Form, and there is no evidence that his signature was obtained by duress or misrepresentation, there is a presumption that he agreed to arbitration. When a party signs a contract, "[a] court can assume that a party to a contract has read and assented to its terms, and absent fraud, misrepresentation, duress, or the like, the court can assume that the parties intended to enforce the contract as drafted." See New v. GameStop, Inc., 232 W. Va. 564, 578, 753 S.E.2d 62, 76 (2013). However, the Plaintiff contends that his electronic signature is "not an effective manifestation of his assent to Macy's arbitration program" because he did not understand to what he was agreeing due to his rudimentary English skills. ECF No. 12

at 6, 7. He further avers that he did not know that he was signing an agreement "by his checking a box on a computer screen." Id. at 2, 4.

The Plaintiff's alleged inability to read or understand English does not make the agreement unenforceable. West Virginia courts have consistently held that "a party to a contract has a duty to read the instrument." Nationstar Mortg., LLC v. West, 237 W. Va. 84, 91, 785 S.E.2d 634, 641 (2016) (citing Syl. pt. 5, Soliva v. Shand, Morahan & Co., Inc., 176 W. Va. 430, 435 S.E.2d 33 (1986)). Thus, the fact that the Plaintiff may have signed the Acknowledgement Form without reading it first does not excuse him from the binding effect of the agreements contained therein. See Nationstar, 237 W. Va. at 91, 785 S.E.2d at 641 (stating the same).

If the Plaintiff could not read the Acknowledgement Form, it was his duty to seek assistance. The West Virginia Supreme Court of Appeals places a duty on the individual claiming illiteracy to acquaint himself with the content of a contract before signing it:

> One is never required to, and never should, execute any written instrument without first becoming fully acquainted with its contents. He should read it, if able; or if illiterate, have it read to him. And when he has signed a written contract, the law prima facie presumes that he discharged his duty; therefore, whether in fact he did it, or chose to waive the privilege, his signature binds him.

Whittaker v. Sw. Va. Imp. Co., 34 W. Va. 217, 12 S.E. 507 (1890) (quoting Joel Prentiss Bishop, Commentaries on the Law of Contracts Upon a New and Condensed Method, § 346 (1887)).

Here, the Plaintiff alleges that he did not understand what he was signing because it was never explained to him. However, the Plaintiff also states that MCS employees assisted him in completing his job application and in filling out his tax and payroll forms due to his inability to read English. Thus, assistance was available to the Plaintiff at the

7

time he signed the Acknowledgement Form and received the Solutions InSTORE Brochure and Plan Document.  Moreover, this was not a case where the Plaintiff was rushed into signing the agreement, without time to seek assistance.  Here, the Plaintiff had thirty days to seek assistance in understanding the Solutions InSTORE program and opt out of the program's binding arbitration.  Therefore, by failing to seek assistance interpreting the Acknowledgement Form or the Solutions InSTORE documents, the Plaintiff neglected his duty to seek assistance.  See Reyes v. Gracefully, Inc., No. 17-CV-9328, 2018 WL 2209486, at *3 (S.D.N.Y. May 11, 2018) (stating the employee had a duty of "making a reasonable effort to have the document explained to him").  Thus, the Court finds that the Plaintiff's alleged inability to read or understand English does not make the Acknowledgement Form unenforceable.  See id. (stating the same); Molina v. Coca-Cola Enters., Inc., No. 8-CV-6370, 2009 WL 1606433, at *8 (W.D.N.Y. June 8, 2009) ("The mere fact that plaintiff does not understand English is insufficient to set aside the arbitration agreement since he is presumed to know its contents and to has assented to its terms . . . Cases have consistently held that a person who does not understand English must make a reasonable effort to have an agreement made clear to him.").

     Under the summary judgment standard that governs this Motion, there is no genuine dispute of material fact.  The Plaintiff does not argue that he did not receive or sign the Acknowledgment Form.  See Farmer v. Macy's, Inc., No. 17-0567, 2019 WL 5079763, at *4 (D. Md. Oct. 10, 2019) (holding there was no genuine dispute of material fact where the plaintiff's argument that she did not receive the agreement was "blatantly contradicted by the record").  His sole argument attacking the agreement's validity is that he did not understand the Acknowledgement Form due to his inability to read English.

8

However, in the absence of special circumstances such as fraud, duress, coercion, or misrepresentation, a plaintiff is held to an agreement that he has signed. Here, the Plaintiff has not alleged any special circumstances that would relieve him of such an obligation. Accordingly, the Court finds that as a matter of law, the parties formed a valid and enforceable arbitration agreement. Therefore, this action must be referred to arbitration under the FAA.

## V. CONCLUSION

The Court finds that the Plaintiff signed a legally binding arbitration agreement when he began his employment with MCS. Moreover, the Plaintiff's FMLA claims alleging discrimination, retaliation, and interference are all clearly covered under the agreement. Thus, the Plaintiff is clearly required to arbitrate the claims brought in this lawsuit. Accordingly, the Court **GRANTS** the Defendant's Motion to Compel Arbitration. ECF No. 10. The Court **DISMISSES** this action and orders the Plaintiff to submit all of his claims to final and binding arbitration in accordance with the terms of the Solutions InSTORE program.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** September 21, 2021

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE